## No. 11,375.

### JAMES, ET AL. *v.* JAMES, EXECUTRIX.

Decided January 28, 1929.   Rehearing denied February 18, 1929.

Mr. JOHN T. BOTTOM, Mr. W. B. WILEY, for plaintiffs in error.

Mr. ERNEST MORRIS, for defendant in error.

*Department Two.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE pending controversy arose out of two different transactions between Thomas 'E. James and his brother William H. James during their lifetime. Both parties thereto are now dead. One transaction was an alleged will of Thomas whereby he devised to his brother William the bulk of his estate and gave to him a bill of sale of personal property, both instruments being executed by

Thomas on the same day in February, 1913. The other consisted of two alleged deeds of conveyance by Thomas to William of the former's real estate, which instruments were executed in March, 1912. After the will was filed by William for probate a protest thereto was made by plaintiffs in this action, two brothers and a sister of Thomas. On the hearing the district court of Moffat county declared the will void on the ground of mental incapacity of the testator Thomas, and of undue influence exerted upon him by his brother William and the latter's family. The protest was sustained by the district court in all respects and a decree was entered declaring the will void. As this was a contest only of the will no specific ruling was made as to the bill of sale and its validity was not then directly passed upon. On review of this judgment by us the decree below declaring the will invalid was affirmed. *James v. James,* 64 Colo. 133, 170 Pac. 285. Thereafter the two brothers and sister of Thomas, deceased, brought the pending action in the district court to set aside that other transaction above mentioned wherein and whereby Thomas made two deeds of real estate to William and also the bill of sale that was part of the same transaction as the will. The action was based upon the same grounds as those relied upon in the action to set aside the will. The district court rendered judgment on the pleadings in favor of the defendant upon the ground that the plaintiffs' cause of action was barred by the statute of limitations. On review of this judgment in the Supreme Court the same was reversed and the cause was remanded to the district court for trial on the merits. *James v. James,* 75 Colo. 164, 225 Pac. 208. Such trial was had in the district court and judgment was for the defendant, executrix of the will, who had been substituted in place of William H. James, her husband, then deceased. This writ of error was sued out by the plaintiffs below for a review of the adverse judgment against them.

This cause has been unnecessarily delayed and prolonged after this writ of error was sued out, for which neither party is entirely free from blame. After the decree of the district court was rendered in November, 1924, time was given to the plaintiffs to file a bill of exceptions and within the limited time the plaintiffs lodged the bill with the trial judge as the court rules require. The defendant spent part of her time in Colorado and part in California. Her counsel of record had terminated his employment and withdrawn from the case and plaintiffs' counsel was unable to have served either upon the defendant or her counsel the notice or summons provided by statute and court rule relating to the settling of a bill. The record attorney would not accept service as his employment was at an end, and the defendant herself, through some artifice not disclosed, was able to persuade the officers in both states whom plaintiffs employed to serve process upon her, that the same should not be, and they were not, served upon her. This court then, upon proper showing, directed that service of summons on the defendant might be, and it was, made by publication. Thereafter this court on application made a further order that unless within a designated time the defendant filed in this court her written consent that the bill of exceptions as tendered to the trial judge might be considered as such, the trial court would be ordered to set aside its findings and decree and grant plaintiffs a new trial. The defendant thereupon accepted the bill and thereafter the cause has been submitted on oral arguments and briefs. Before the bill, however, was lodged in this court, both the parties had filed a series of printed briefs and after the bill was thus settled they have filed another series of briefs, thus entailing upon us unnecessary labor which the dilatory tactics imposed and which would have been unnecessary had the usual practice and procedure been followed.

The previous opinions of this court relating to this controversy, which should be read in connection with this

158

opinion, are *James v. James,* 64 Colo. 133, and 75 Colo. 164. In our view of the applicable law the discussion by counsel has gone far beyond the real issues. An attentive reading of this record and of our former opinions above referred to, satisfy us that the controlling question, which the defendant has discussed at great length and upon which she relies here, is res judicata against her and requires a reversal of this judgment. In the case reported in 64 Colo. 133, we affirmed the decision of the district court which found the alleged will of Thomas James void because at the time of its execution he was mentally incapacitated to make it, and because of the undue influence of his brother William which was brought to bear upon him and to whom the instrument purported to give his entire estate. The bill of sale of personal property it is true was not directly involved in that case and our decision there does not purport to include it. But this bill bears the same date as that of the will. They were made on the same day and, as decided in the case reported in 64 Colorado, the bill of sale and the will were component parts of the same business transaction. If the will was void because, at the time of its execution, Thomas James was of unsound mind and was unduly influenced by William to make it, it would seem as a matter of logic, and we think it true as matter of law, that the same infirmity attaches to and vitiates the bill of sale the same as it did the will. True the defendant says that the bill of sale was made several months before the will was executed, but the evidence as brought up in the transcript of the record discloses that the two papers were signed on the same day and, as said in the James case (64 Colorado), that they were part of the same transaction. We find nothing in the record before us or in the findings below to justify the assertion of the defendant here that the bill of sale was made ten or twelve months before the will was executed. We think it clearly appears—and if the court had found otherwise the find-

ing would not be sustained—that the two were part of the same transaction that occurred or took place on the same day.

There is an additional reason and it seems to us a conclusive one why our decision in the case reported in 64 Colorado is res judicata as to this bill of sale and also the two deeds which were made ten or eleven months before the will was made, and we might add that even if the bill of sale was made at the same time the two deeds were made, several months before the will was executed, the judgment in that case would still be res judicata as we now proceed to show.

The plaintiffs in this action filed in the county court a caveat to the will in which it is alleged that at the time the will was made and for six years immediately preceding, Thomas James was mentally incapable of making a will. It may be that if the proponent had seasonably and properly objected to this allegation that Thomas was insane for more than six years before the execution of the will, it might have been eliminated, but William, the proponent, did not see fit to do so and denied this allegation in the answer which he filed to the caveat. In the county court the caveat was not sustained, but on appeal the district court affirmed findings of a jury by it impaneled against the proponent of the will and in favor of the objectors upon all the issues then litigated, and we affirmed this judgment on review as above stated. It is no answer to say that such finding was unnecessary to the decision of that case, because it might have been, and could have been, made upon another issue. In *Albertson v. Clark,* 70 Colo. 129, 197 Pac. 757, speaking by Mr. Justice Burke, we said that to support the plea of res judicata, it is essential that the question at issue in the second action shall have been presented and determined in a former suit between the same parties. The only inquiry is as to the identity of the parties and the issue. See also *Fort v. Bietsch,* 85 Colo. 176, 274 Pac. 812, de-

cided on this day. Applying that doctrine to this case, we say that in the hearing upon the caveat the issue, as to the mental capacity of Thomas for and during the period of six years immediately before the will was executed, was presented by the caveat and by the answer thereto, and was determined adversely to the contention of the defendant here. William James, the executor named in the will and the person to whom the estate of Thomas was devised, himself put in issue the testator's insanity and mental incapacity for six years preceding the execution of the will, and the finding of the court thereupon was that for this long period of time before the execution of the will Thomas was mentally incompetent and unable to make a will. That decision was affirmed by us and it is res judicata in this second action where the same question is again presented.

The decision equally applies to the two deeds. These two deeds were made about ten or eleven months before the will was executed which was, of course, within the period of two years immediately preceding the execution of the will, during which time the finding of the district court, and which was approved by us, was that Thomas was incapable of making a will. In this connection it is proper to say that courts generally hold that a greater degree of mental capacity is required for executing deeds than in making a will. If during the period of time within which these two deeds were made by Thomas he was mentally incompetent, and was so declared to be by the district court and by us in the cases referred to, certainly he was incapable of making these deeds. The trial court instead of relitigating the validity of the bill of sale and the two deeds, should, under the uncontradicted showing, have adjudged them invalid as having been previously so determined by this court. We see no escape from the conclusion that the issue as to the validity of the bill of sale and the two deeds in this action is res judicata and should not have been again litigated or determined.

But it is said that our decision in *James v. James,* 75 Colo. 164, 225 Pac. 208, is res judicata against plaintiffs of the matters involved in the present action. There is nothing whatever in this contention. The only question of fact or law decided in that review was that the plaintiffs' cause of action did not accrue until the will of Thomas James was adjudged invalid. And as that action was brought within the time prescribed by the statute of limitations, the judgment then under review, which was contrary to our view, was reversed and the same remanded for further proceedings not inconsistent with the views therein expressed. Nothing was decided in that case affecting the rights of the parties in the estate of Thomas James.

Another point made by the defendant is that the doctrine of res judicata applies only to the parties and their privies. That is true. There are different kinds of privies: privies in blood as heir and ancestor; privies in representation, as executor or administrator to the deceased, and there are also privies in estate. We think all the requirements applicable to privies are present in this record. William James was the executor of the estate of Thomas under his will and he was the principal devisee and legatee. When William died before this litigation was concluded the defendant here, his widow, was appointed and qualified as executrix of the estate. She certainly was privy in representation as executrix, substituted as such in lieu of her husband, upon the latter's death. If privy in estate was essential, that feature is also present in the case because the defendant is the sole legatee or heir of her deceased husband. If the judgment in question was binding upon William, it is binding also upon her. We think it is binding upon both of them. We have not discussed all of the questions which have been well argued by counsel on both sides because we think that whatever might be our decision upon them they would not affect or in any wise control or limit our decision upon the question of res judicata. That of itself is

decisive of this controversy against the decision of the district court.

In conclusion we might add, as determined in our latest case, *Croke v. Farmers Company*, 71 Colo. 514, 208 Pac. 466: "Questions once litigated and determined may not be raised by the same parties in a subsequent action. If the matter in question is controverted by the pleadings it will be conclusively presumed to have been litigated." Citing *Bijou Irr. Dist. v. Weldon Valley Ditch Co.*, 67 Colo. 336, 184 Pac. 382. In that case it was also held that there is a privity between a corporation and its shareholders, and a decree against the former is conclusive against the latter in respect to their rights as such. If that be true, certainly there is privity in estate between Mrs. James, widow of William James, and William, as well as privity in representation.

Defendant in error contends that whatever may be the views of the court with respect to the main questions involved, the plaintiffs are estopped to be heard with their objection to the bill of sale of personal property because this property was sold by the executrix and the proceeds thereof distributed to all of the heirs of Thomas James in proportion to their respective interests, and that these plaintiffs accepted their proportionate share of the proceeds of such sale without objection. There is force in this contention, but in the state of the record we do not think the estoppel operates. There is confusion in the record, and doubt in our minds, as to whether plaintiffs knew from what source the money which was distributed to, and received by, them, came. And there are other uncertainties about the showing in that behalf not necessary to mention. We think that matter should be left to the trial court when the cause is remanded, to conduct a hearing and make findings of fact and a judgment with respect to this money which has been paid to them, and to frame, or cause to be framed, the appropriate issues in that particular and upon the evidence produced make the appropriate findings and enter a judgment or order

with reference to this matter. This hearing may be had in connection with, and as part of, the accounting demanded and to which plaintiffs are entitled.

There is grave doubt as to whether the instruments in question are deeds or testamentary in character. Particularly is it uncertain whether any present estate or interest whatever is conveyed, though the instruments are in form deeds and they were recorded. However, it might be that if decision upon the point was necessary we would feel obliged, under previous decisions of this court, to hold them testamentary in character, but since we are thoroughly convinced that the matters in dispute are res judicata against the defendant, we have put the decision upon that ground.

It follows that this judgment should be, and it is, reversed and the cause is remanded for an accounting as prayed for, and for general appropriate relief which plaintiffs as heirs at law may have, with instructions that further proceedings must not be inconsistent with the views expressed in the opinion.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE ADAMS and MR. JUSTICE BUTLER concur.

*On Rehearing.*

MR. JUSTICE CAMPBELL.

There is only one ground set forth in the petition of the defendant in error for a rehearing and withdrawal of our opinion, that merits consideration and that only—paradoxical as it may seem—because of its entire lack of merit, though urged by the writer with apparent confidence in its potency. Our decision is based upon the proposition that the matter sought to be litigated herein, namely, the mental capacity of the deceased Thomas E. James, is res judicata, and made so by our affirmance of the nullifying judgment of the district court in cause

No. 8644 on the docket of this court, reported in 64 Colorado 133, 170 Pac. 285. The point sought to be made here by defendant in error is that the judgment in that case was based solely upon the finding of the jury, which was approved by the trial court, that Thomas E. James, the decedent, was insane only at the time of executing the paper writing offered for probate as a will, and not at any other time during the period of six years immediately preceding that time, which period would include the time when the bill of sale and the deeds in question in this case were executed. Assuming with counsel that the record in case No. 8644 is before us, let us examine this contention. The verdict of the jury in that case is that the instrument purporting to be the last will and testament of Thomas E. James is not his last will. The court submitted to the jury for answer the two following questions: 1. "Was Thomas E. James, the decedent, at the time of executing the paper writing here offered for probate, of sound mind and memory? Answer: No. 2. Was Thomas E. James, the decedent, unduly influenced at *or before* the time of executing the paper writing here offered for probate, by William H. James or some member of his family? Answer: Yes." The general verdict and special answers are consistent. The court entered the judgment nullifying the will upon this verdict, and special findings, of the jury that the instrument was not the will of Thomas. As proof or justification of the assertion in this petition for rehearing, counsel calls our attention to instruction number 8 given by the court in case 8644 wherein the jury were instructed that they must base their finding "as to the mental capacity of Thomas E. James and as to alleged undue influence exercised over him solely at the time he executed the writing offered as his last will and testament, and not at any other time whatsoever. Evidence relating to his condition of mind and to undue or other influence claimed to have been exercised over him, at any time other than when he was executing said instrument, has been admitted for the sole

and only purpose of enabling you to better determine what his mental condition was, and what, if any, influence was unduly or otherwise exercised over him at said particular time." The instruction concluded with the statement that if on the day he, Thomas, executed the paper he was mentally competent to make it and was not acting under undue influence, the jury should return a verdict for the proponent regardless of his mental condition at any other time.

While in this instruction 8 the court did instruct the jury that their verdict must be based on their finding as to the mental capacity of Thomas solely at the time he executed the paper, and not at any other time, yet the court in this instruction referred to instruction number 10 wherein the court told the jury that the evidence which was admitted at the hearing as to such mental incapacity theretofore, and at all times during a period of six years immediately before the will was executed, was admitted for the purpose of enabling them better to determine what the mental condition of Thomas was, and what, if any, influence was exerted over him at the particular time he signed the instrument. We must presume the jury obeyed the order of court in this instruction and since it found that Thomas was insane when he signed the document offered for probate, it is a fair and just conclusion that the finding was, at least in part, based upon the jury's implied further finding that at other times, as alleged in the complaint, and denied in the answer, Thomas was also insane; and that such finding entered into and in part formed the basis of the particular finding of the jury that he was insane on the day he signed the will. That is, the jury must have concluded, and so found, from the evidence, as to the mental incapacity of Thomas for six years immediately preceding the time of the execution of the will as well as at that time, that during all this period he had not the mental capacity to make a will. We say, therefore, this record in case No. 8644 conclusively shows that the issue of insanity when the

will was made, and for six years prior thereto, not only was tendered by the pleadings, but was actually litigated by the court's special permission, and the jury obeyed the instruction and considered the evidence introduced on such issue, and decided in favor of the caveator as one element going to show that Thomas was insane during all this period of time down to and including the moment the will was signed.

As matter of fact and law, the answer of the jury to this special interrogatory submitted by the court that Thomas was insane at the time he signed the will, is entirely consistent with the implied finding it also made, and with the verdict, and which is supported by the evidence, that he was also insane for a long time prior thereto, and this implied finding enabled the jury better to determine his mental state down to and including the time the alleged will was actually signed. A finding that he was sane during the preceding six year period would be inconsistent with a finding that at the very moment of signing the will he was insane. In the Croke case, supra, Judge Burke said: "Questions once litigated and determined may not be raised by the same parties in a subsequent action. 'If the matter in question is controverted by the pleadings it will be conclusively presumed to have been litigated.' " Citing *Irrigation District v. Ditch Co.,* 67 Colo. 336, 184 Pac. 382. Applying this doctrine, we say that the issue as to the mental capacity of Thomas James, the alleged testator, included not only the time he made the will, but the six years immediately prior thereto. It was tendered by the caveat and controverted by the answer of Thomas thereto. Much evidence responsive to that issue covering the period of six years before the will was signed, was produced. The court told the jury they might consider it for the purpose of enabling them the better to determine the mental condition of Thomas at the very moment he signed the alleged will. We may, therefore, rightly presume, both as a problem in logic

and as matter of fact and law, that the jury obeyed the instruction of the court and passed upon all the issues of fact as tendered by the parties.

The jury not only made answers to the two special interrogatories above mentioned, but also found in their verdict proper that the instrument purporting to be the last will and testament of Thomas is not his last will. This verdict, separate and distinct from the two special findings, is enough upon which to base the assertion that the jury found, and intended to find, that during a period of six years before the will was signed Thomas did not, during any portion of the time, have the mental capacity to make it.

There is no merit in this petition for rehearing and it is accordingly denied.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE ADAMS and MR. JUSTICE BUTLER concur.